**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| H-W TECHNOLOGY, L.C. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:11-CV-651-G** |
| | § | |
| APPLE, INC., et al., | § | |
| | § | |
| **Defendants.** | § | **Pretrial Management** |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

By standing order of reference dated June 8, 2011, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.  Before the Court are *Defendant Apple Inc.'s Motion to Dismiss Apple Under FRCP 21 for Misjoinder or, in the Alternative, to Sever and Transfer Claims Against Apple and Memorandum in Support*, filed December 13, 2011 (doc. 281), and *Defendant Apple Inc.'s Motion for Leave to File Supplemental Authority*, filed May 14, 2012 (doc. 355).  Based on the relevant filings and applicable law, the motion for leave to file supplemental authority is **GRANTED**, the motion to dismiss should be **DENIED**, and the alternative motion for severance and transfer should be **GRANTED**.

## I.  BACKGROUND

Plaintiff H-W Technology, L.C. (Plaintiff), sues 32 different defendants under 35 U.S.C. § 271 for allegedly infringing U.S. Patent No. 7,525,955 (the 955 patent).  (docs. 1, 38.)  It alleges that each defendant is infringing the 955 patent by making, using, importing, selling, or offering to sell products or methods that utilize, in whole or in part, a multi-convergence device on which one or more domain specific applications allow users to complete a merchant transaction without the need

to generate a voice call, or products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  (doc. 38 at 15-25.)

Apple Inc. (Apple) now moves the Court to dismiss it from this action under Fed. R. Civ. P. 20 and 21.  (doc. 281.)  In the alternative, it seeks to be severed from the remaining defendants in this action and to have all proceedings against it transferred to the Northern District of California under 42 U.S.C. § 1404(a).  (*Id.*)  Apple also moves for leave to file recent supplemental authority. (doc. 355.)  All of the motions are now ripe for consideration.

## II.  MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

Apple seeks to introduce *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), as supplemental authority on grounds that it controls the disposition of the motion to dismiss.  (doc. 355.)  After cursorily pointing out that Apple filed this motion four months after the briefing on its motion to dismiss was closed, Plaintiff proceeds to explain why Apple's motion to dismiss should be denied even under *In Re EMC Corp.*  (doc. 363.)

Apple's motion for leave to file *In re EMC Corp.* as supplemental authority is granted for two reasons.  The authority is highly pertinent to Apple's motion to dismiss because it outlines the standard for determining misjoinder in patent cases, such as this one, that were filed before the recent passage of the Leahy-Smith America Invents Act (the America Invents Act).  Plaintiff, moreover, has addressed the issues raised by the supplemental authority in its response to the motion for leave.  The authority is therefore accepted for purposes of making a recommendation on the motion to dismiss.

### III.  MOTION TO DISMISS

Apple moves the Court to dismiss Plaintiff's claims against it for misjoinder under Rules 20 and 21.  (doc. 281 at 7-16.)  It argues that the complaint does not allege joint, several, or alternative liability against it arising out of the same transaction or occurrence as the other defendants, and there are no common questions of law or fact.  (*Id.* at 7-14.)  It also argues that it will suffer prejudice if forced to defend itself while improperly joined to a multitude of unrelated defendants.  (*Id.* at 14-16.)

The Federal Rules of Civil Procedure allow multiple defendants to be joined in one action if (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P. 20 (a)(2).  A party is misjoined if the conditions for permissive joinder set forth in Rule 20(a)(2) are not met.  *Mannatech, Inc. v. Country Life, LLC*, 2010 WL 2944574, at * 1 (N.D. Tex. July 26, 2010).  A court may remedy misjoinder by dropping the misjoined parties on such terms that are just, or by severing any claims against the misjoined parties and allowing them to proceed separately.  *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010) (citations omitted); Fed. R. Civ. P. 21.  Even if the conditions for permissive joinder are met, a court retains the discretion to refuse joinder to avoid prejudice and delay, ensure judicial economy, or safeguard the principles of fundamental fairness.  *Acevedo*, 600 F.3d at 521 (citations omitted).

### A.  Transaction or Occurrence Prong

Apple first argues that the transaction or occurrence prong of the Rule 20 joinder analysis has not been met.  (doc. 281 at 8-13.)  It essentially argues that the other defendants in this case are unrelated and are in fact competitors of Apple; each defendant has been separately and

independently accused of infringing the 955 patent based on their own products; and there is no connection between the named defendants and their products except that they are accused of infringing the same patent with products that allegedly use the same generic technology. (*Id.*; doc. 304 at 508.)

The first prong of the permissive joinder analysis requires a determination of whether the claims against the multiple joined defendants arise out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(2). Although the Fifth Circuit has not endorsed a specific test to determine when this first prong is met, district courts in this circuit have consistently held that transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a) if there is some connection or logical relationship between the various transactions or occurrences – i.e., when there is "some nucleus of operative facts." *See e.g. My Mail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004); *Imperium (IP) Holdings, Inc. v. Apple Inc.*, 2012 WL 461775, at *2 (E.D. Tex. Jan. 20, 2012); *MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*, 2011 WL 4591917, at *3 (E.D. Tex. Sept. 30, 2011); *Tompkins v. Able Planet Inc.*, 2011 WL 7718756, at *2 (E.D. Tex. Feb. 17, 2011).

Applying the logical relationship test, district courts in this circuit have found joinder of unrelated defendants proper where the accused products allegedly infringe the same patent or patents, and where the accused products are not dramatically different from each other or are sufficiently similar to each other. *See e.g. Imperium*, 2012 WL 461775, at *2; *Mannatech*, 2010 WL 2944574, at *1; *Adrain v. Genetec Inc.*, 2009 WL 3063414, at *2 (E.D. Tex. Sept. 22, 2009); *Lodsys, LLC v. Brother Int'l Corp.*, 2012 WL 760729, at * 2 (E.D. Tex. Mar. 8, 2012); *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *2 (E.D. Tex. Sept. 28, 2010); *Oasis Research, LLC v.*

*Adrive, LLC*, 2011 WL 3099885, at *2-3 (E.D. Tex. May 23, 2011).  The approach taken by these courts is in the minority, however.

The prevailing approach among numerous other courts is that the first prong of Rule 20(a)'s joinder analysis is not satisfied where unrelated defendants, based on different acts, are alleged to have infringed the same patent.  *See Rudd v. Lux Prods. Corp. Emerson  Climate Techs. Braeburn Sys., LLC*, 2011 WL 148052, at *2-3 (N.D. Ill. Jan. 12, 2011) (listing cases in the majority); *Body Sci. LLC v. Boston Scientific Corp.*, 2012 WL 718495, at *4 (N.D. Ill. Mar. 6, 2012) (same).  The majority approach is in line with the Leahy-Smith America Invents Act (the America Invents Act), signed into law on September 16, 2011, after this action was filed, which provides, among other things, that "accused infringers may not be joined in one action as defendants . . . or have their actions consolidated for trial, based solely on the allegations that they each have infringed the patent or patents in suit." 35 U.S.C. § 299(b).  The joinder provision of the America Invents Act does not apply retroactively and does not control the outcome of this case, however.  *Id.*

After the filing of this motion and the passage of the America Invents Act, the Federal Circuit handed down its decision in *In re EMC Corp.* on a petition seeking a writ of mandamus to direct the district court to sever and transfer the claims against certain defendants in *Oasis Research, LLC v. Adrive, LLC*, 2011 WL 3103972 (E.D. Tex. July 25, 2011).  The Federal Circuit rejected the district court's holding that the claims against unrelated defendants arose out of the same transaction, occurrence, or series of transactions or occurrences, because the accused services were "not dramatically different." *In re EMC Corp.*, 677 F.3d at 1359.  The Federal Circuit reasoned that the standard seemed "to require little more than the existence of some similarity in the allegedly infringing products or processes, similarity which would exist simply because the same patent

claims are alleged to be infringed." *Id.* In rejecting the standard used by the trial court, the Federal Circuit clarified that motions to sever in patent cases were governed by Federal Circuit law, instead of regional circuit law, because joinder in patent cases was based on an analysis of the accused acts of infringement. *Id.* at 1354. The Federal Circuit acknowledged the passage of the America Invents Act but found that it did not apply retroactively, and that cases filed before its enactment would be governed by its decision in *In re EMC Corp. Id.* at 1356.

The Federal Circuit then outlined the standard for determining whether joinder of independent actors is permissible under Rule 20. *Id.* at 1357-60. Under that standard, "independent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action," i.e. when "there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *Id.* at 1358. "In other words, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts." *Id.* (emphasis in original).[1] Joinder of independent defendants is appropriate only "where the accused products or processes are the same in respects relevant to the patent." *Id.* at 1359. "[T]he sameness of the accused products or processes is not sufficient," however. *Id.* As the Federal Circuit explained:

> Claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts. To be part of the "same transaction" requires

---

[1] The Federal Circuit reached this holding by relying on Supreme Court authority and authority from its sister circuits. *See In re EMC Corp.*, 677 F.3d at 1358. It specifically relied on the standard used by the Fifth Circuit in determining whether a claim and counterclaim arise from the same transaction or occurrence under Rule 13. *See id.* (citing *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998) (stating that "[w]hile using the 'logical relationship' concept, [the] Circuit gives weight to whether the claim and counterclaim share an 'aggregate of operative facts.'"); *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85-86 (5th Cir.1997) (evaluating whether two claims satisfy the transaction-or-occurrence test by considering, among other things, whether the issues of fact and law are "largely the same" and "whether substantially the same evidence" will support or refute the claims)).

shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts. The sameness of the accused products is not enough to establish that claims of infringement arise from the "same transaction." Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical.

In addition to finding that the same product or process is involved, to determine whether the joinder test is satisfied, pertinent factual considerations include whether the alleged acts of infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, licensing or technology agreements between the defendants, overlap of the products' or processes' development and manufacture, and whether the case involves a claim for lost profits. The district court enjoys considerable discretion in weighing the relevant factors.

*Id.* at 1359-60.

Here, Plaintiff's first amended complaint (the complaint) does not allege that Apple acted in concert with or in conspiracy with any of the other defendants to infringe the 955 patent, or that the defendants otherwise controlled, directed, or contributed to each other's conduct. (*See* doc. 38 at 15.) The complaint appears to accuse each defendant of separately and independently infringing the 955 patent based on its own acts and products, and is devoid of any allegations linking them together. (*Id.* at 15-24.) The complaint also fails to seek joint, several, or alternative relief from the defendants. (*Id.*) While the complaint alleges that the Apple's accused products and methods utilize, "in whole or in part," allegedly infringing technology, it does not provide any facts in support. (*Id.* at 15.) Similarly, Plaintiff's infringement contentions assert that Apple "directly contributorily, and/or by inducement" infringed the patent in suit, but fail to provide any facts in support and only assert joint infringement by Apple and *its customers*. (doc. 281-4 at 3.)

Plaintiff contends that the claims against all of the defendants broadly center around infringing acts that involve completing merchant transactions on IP phones without the need to make

a phone call, and involve technical similarities common to all of the defendants.  (doc. 290 at 5-6.)

In other words, Plaintiff argues that the infringing products, methods, and systems of unrelated

defendants infringe the same patent and are technically the same or similar in respects relevant to

the patent in suit.  As noted, however, the sameness of the accused products is not sufficient by itself

to establish that claims of infringement arise from the same transaction or occurrence or series of

transactions or occurrences.  *See In re EMC Corp.*, 677 F.3d at 1359.  "To be part of the 'same

transaction' requires shared, overlapping facts that give rise to each cause of action, and not just

distinct, albeit coincidentally identical, facts."  *Id.*

To overcome this hurdle, Plaintiff now accuses Apple of contributory infringement for

offering for sale on its "App Store" software applications that permit the completion of merchant

transactions on IP phones.  (*See* doc. 290 at 10.)  It also asserts that Apple makes three of the other

defendants' applications available for download through its App Store.  (*Id.*)  Aside from the fact

that these assertions were never part of Plaintiff's pleadings,[2] the assertions are not sufficient to

connect the facts underlying Apple's claim with the facts underlying each of the other claims.  For

accused products that are "otherwise coincidentally identical" to be part of the same transaction,

there must be an "actual link" between the facts underlying *each* infringement claim.  *In re EMC

Corp.*, 677 F.3d at 1359 (emphasis added).  Since the claims against each of the defendants are not

based on shared overlapping facts, other than the fact that the accused products are allegedly

technically similar and infringe the same patent, Apple's joinder is improper under *In re EMC Corp.*

---

[2] Notably, when the defendants argued in an earlier joint motion to dismiss that Plaintiff had failed to allege indirect
infringement (i.e. induced and contributory infringement) in its complaint (doc. 195 at 14-18), Plaintiff never disputed
those assertions in its response to the motion to dismiss, and arguing instead that the patent claims at issue did not require
the combined activity of multiple entities (*see* doc. 225 at 18-24).  It pointed out only with respect to joint infringement
that the accused products were alleged to utilize "in whole or in part" the infringing technology.  (*Id.* at 21-22.)

## B.  Common Questions of Law or Fact

As noted, Rule 20(a)(2) also requires Plaintiff to establish common questions of law or fact. *See* Fed. R. Civ. P. 20(a)(2).  Because Apple's joinder is improper for failure to satisfy the transaction or occurrence test of Rule 20(a)(2), there is no need to determine whether any question of law or fact common to all defendants will arise in this action.

## C.  Remedy for Misjoinder

The next step is to determine the appropriate remedy for Apple's improper joinder.  A court faced with misjoinder may, on motion or on its own, drop the misjoined party at any time, or sever any claim against the misjoined party.  *Acevedo*, 600 F.3d at 520; Fed. R. Civ. P. 21.  Apple does not present any specific argument as to why it should be dismissed instead of severed, and the proceedings against it are sufficiently developed for severance to be the more appropriate remedy. The case has been pending for fifteen months and the parties have already filed their opening claim construction briefs.  The Court should therefore deny Apple's motion to dismiss and proceed to its alternative motion to sever and transfer.

## IV.  MOTION TO SEVER AND TRANSFER

Apple moves the Court to sever it from this action and transfer all proceedings against it to the Northern District of California pursuant to 42 U.S.C. § 1404(a).  (doc. 281 at 17-22.)

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).[3]  As a threshold matter, the language of § 1404(a) requires the court to determine whether the proposed transferee district is one in which the suit might have been brought.  *In re*

---

[3] Although the provision was amended in 2011 and contains additional language, the amendments took affect in January 2012, are not retroactive, and therefore do not apply to this case.  *See* 28 U.S.C. § 1404(a).

*Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Once this threshold has been met, the court must consider a number of private and public interest factors to determine whether or not, on balance, the litigation would more conveniently proceed and the interests of justice would be better served by transfer to a different forum. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*).

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*) (citing *Piper Aircraft Co. v. Hartzell Propeller, Inc.*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

"The moving parties bear the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One*, *N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 812 (N.D. Tex. 2002) (Fitzwater, J.). The party seeking transfer must show that the transferee venue is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. A court may not transfer a case where the result is merely to shift inconvenience of the venue from one party to the other. *Fowler v. Broussard*, 2001 WL 184237, at *2 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.).

## A.  Proposed Transferee District

As a threshold matter, the Court must determine whether the proposed transferee district (i.e.

10

the Northern District of California) is one in which the suit might have been brought.  *In re Horseshoe Entm't*, 337 F.3d at 433.  For all civil actions brought in a United States district court, venue is proper in

> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  In addition to the general venue provisions under § 1391, Congress has adopted a special venue statute for patent litigation which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established business."  28 U.S.C. § 1400(b).

It is undisputed that Plaintiff could have brought this action against Apple in the Northern District of California because Apple's corporate headquarters are located in that district in Cupertino, California, its accused products were designed and developed there, and it regularly conducts business there involving those accused products.

**B.  Private Interest Factors**

Since the proposed transferee district is one in which suit might have been bought, the next step is to determine whether the private factors set out in *Volkswagen I* favor transfer to that district.

1. Relative Ease of Access to Sources of Proof

The first private factor is the relative ease of access to sources of proof.  *Volkswagen I*, 371 F.3d at 203.  Apple contends that it will substantially be more convenient to access sources of proof

11

in the proposed venue because the vast majority of documents relevant to the claims against it are located in its corporate headquarters in that venue. (doc. 281 at 18.) Plaintiff responds that the location of the documents is meaningless because the vast majority of proof in this case will involve electronically produced documents, not physical evidence. (doc. 290 at 13-14.) It also argues that Apple's assertions that most of the documents are in California are general and unsupported. (*Id.*)

The first private interest factor weighs in favor of transfer when evidence can be more readily accessed from the transferee district. *Internet Machines LLC v. Alienware Corp.*, 2011 WL 2292961, at *5 (E.D. Tex. June 7, 2011). Although technological advances have made access to sources of proof more convenient, the advances have not rendered the sources of proof factor superfluous and the factor is still meaningful in the § 1404(a) analysis. *See Volkswagen II*, 545 F.3d at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The factor is even more significant in patent infringement cases because the bulk of the relevant evidence in those cases usually comes from the accused infringer. *In re Genentech, Inc.*, 566 F.3d at 1345. The place where the alleged infringer's documents are kept therefore weighs in favor of transfer to that location. *Id.*

Apple submitted evidence showing that electronic and paper records related to the research, design, and development of its accused products, as well as its business records related to the product revenue, are located in its headquarters in the proposed transferee venue. (doc. 281-2 at 2.) The first factor therefore favors transfer to the Northern District of California. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (sources of proof factor favored transfer when it appeared that a significant portion of the evidence would be located in the proposed transferee district).

2. <u>Availability of Compulsory Process</u>

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen I*, 371 F.3d at 203. This factor favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses, i.e., it has the power to compel attendance at both depositions and trial. *Internet Machines*, 2011 WL 2292961, at *6 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)).

Apple essentially concedes that the second factor is neutral because it is too early to identify whether more third-party prior art witnesses will be from California, but argues that foreseeable witnesses with knowledge of the research, design, and development of the accused products reside and work in or near Cupertino, and that no Apple employees in Texas were involved in the design or manufacture of the accused products. (doc. 281 at 19-20; doc. 281-2 at 2.) Plaintiff responds that Apple does not account for the witnesses available in this district through the "Apple Consultants Network", which features independent professional service providers and technology consultant firms that specialize in, and are certified in, Apple technologies, and deliver on-site technology services and support to home users and businesses. (doc. 290 at 14.) Plaintiff argues that it may use these witnesses to prove infringement and damages. (*Id.*)

Apple has established on a general level that its third party witnesses will more likely be from California and will likely have more knowledge of the accused products and technologies, and claims of damages, than any independent service providers or technology firms who were not involved in the research, design, and development of the accused products and technologies. To the extent, if any, the subpoena powers of the Northern District of Texas may be invoked under Fed. R. Civ. P. 45(b)(2) with respect to non-party Apple employees, those powers will be of little use in this

case. *See In re Acer Am. Corp.*, 626 F.3d at 1255. "By comparison, the subpoena powers of the Northern District of California may be expected to be invaluable, in the event process is required to hale relevant witnesses into court." *Id.* The second private factor also tips in favor of transfer. *See id.*

       3.  <u>Cost of Attendance for Willing Witnesses</u>

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. Apple argues that a majority of the witnesses, including Apple employees with relevant knowledge of the infringement and damages claims, reside in Northern California, and that transfer of the severed action will reduce their cost of attendance. (doc. 281 at 19.) Plaintiff responds that both parties will have a small number of party witnesses facing comparable inconvenience, and that transfer will not reduce the expense for its own witnesses as well as potential third party witnesses in this district available through the Apple Consultants Network. (doc. 290 at 14-15.)

The Fifth Circuit employs a 100-mile rule to assess the third private interest factor of cost of attendance for willing witnesses. *See Volkswagen I*, 371 F.3d at 204-05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205. "The Court must consider the convenience of both the party and non-party witnesses." *Vargas v. Seamar Divers Int'l, LLC*, 2011 WL 1980001, at *7 (E.D. Tex.

May 20, 2011) (citing *Volkswagen I*, 371 F.3d at 204 (requiring courts to "contemplate consideration of the parties and witnesses")).

Here, Apple has presented evidence warranting a finding that the third private interest factor favors transfer. A declaration from its vice president of human resources states that the research, design, and development of the accused products took place in Apple's facilities in Cupertino, and that foreseeable witnesses with knowledge of the research, design, and development of the accused products reside and work in or near Cupertino. (doc. 281-2 at 2.) In comparison, there is no evidence that Plaintiff, who was incorporated in Texas only a year before filing this suit, and whose business address appears to be a single family home in a residential neighborhood, has any employees in Texas who are potential witnesses. (*See* docs. 281-7, 281-8.) While Apple's initial disclosures identify two California residents as having relevant technical and engineering information regarding one of its accused products (doc. 281-6 at 5), Plaintiff's initial disclosures identify two Puerto Rican residents as having relevant knowledge of the 955 patent, its conception, reduction to practice, and its prosecution history (doc. 281-5 at 3-4). The only people that Plaintiff's initial disclosures identify from this district are two Dallas attorneys purportedly having knowledge of the 955 patent, its prosecution history, and its acquisition by Plaintiff. (*Id.*)

It appears, based on this evidence, that a majority of the witnesses in the severed action will be from California, with a couple of witnesses from Puerto Rico and another couple of witnesses potentially from Dallas. To the extent that the attorneys from this district can be considered potential witnesses, travel to California will be costly and burdensome for them. For the two other witnesses, travel to either district will be costly and burdensome. However, for a majority of the witnesses residing in California, being called into court in the Northern District of California will

undoubtedly be more convenient and less costly than being haled into court in this district.

While Plaintiff generally asserts that third-party witnesses are available through the Apple Consultants Network in this district, the Court is not convinced that independent service providers or technology firms delivering on-site technology services and support to home users and businesses will have the same knowledge regarding the research, design, and development of the accused products as the Apple employees who actually researched, designed, and developed them. Plaintiff, moreover, has not explained why it will not be able to call members of the network located in or around Cupertino as witnesses if the need arises. The third private interest factor also favors transfer.

4. Other Practical Problems

 Neither party has pointed out other practical problems that would weigh for or against transfer of the case to the transferee district. The fourth private interest factor is therefore neutral.

## C. Public Interest Factors

In addition to considering the private interest factors, a court must also consider the public interest factors to see if they favor transfer.

1. Court Congestion

The first public interest factor is the administrative difficulties flowing from court congestion. *Volkswagen I*, 371 F.3d at 203. Apple argues that this factor is neutral because both this district and the Northern District of California are similarly congested. (doc. 281 at 20.) Plaintiff responds with statistics showing that from June 2010 to June 2011, this district had 366 pending cases and that the median time from filing to disposition for civil cases was 6.3 months with only 61 civil cases over 3 years old. (doc. 290 at 16.) In comparison, during the same time period, the

Northern District of California had 486 pending cases and the median time to disposition of civil cases was 8.0 months with 535 civil cases over 3 years old.  (*Id.*)  Apple responds with statistics of its own showing that the median time to disposition of patent cases in the Northern District of California is 300 days versus 264 days in this district, which amounts to only a difference of about a month.  (doc. 304 at 9.)

As the first public interest factor is "the most speculative" and the difference between the two districts' time to trial is only about one month for patent cases and about two months for civil cases, this factor is neutral.  *See On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (reaching same conclusion where the difference between the two districts' time to trial was five months).  At most, the factor only slightly weights in favor of transfer due to the slightly quicker time to trial in patent cases.  *See ColorQuick L.L.C. v. Vistaprint Ltd.*, 2010 WL 5136050, at *6 (E.D. Tex. July 22, 2010).

2. Local Interest

The second public interest factor is the local interest in having localized interests decided at home.  *Volkswagen I*, 371 F.3d at 203.  Apple contends that the transferee district has a localized interest in litigation involving a defendant residing in that forum, accused products developed in that forum, and relevant witnesses and documentation located in that forum.  (doc. 281 at 20.)  Plaintiff responds that this district has a local interest in adjudicating this case because Apple sells the allegedly infringing products throughout the United States, including this district, and that its choice of forum must be given deference.  (doc. 290 at 17-18.)

"While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the

events that gave rise to a suit, [the second public interest] factor should be weighed in that venue's favor." *In re Acer Am. Corp.*, 626 F.3d at 1256 (citing *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338). Moreover, where the accused products are sold throughout the United States, the citizens of the forum where the suit is brought have no more or less of a meaningful connection to the case than any other venue. *See In re TS Tech*, 551 F.3d at 1321.

Here, the Northern District of California has a localized interest in this matter because the company alleged to have caused the harm is located there; the research, design, and development of the allegedly infringing products occurred there; and the relevant documents and witnesses are located there. In addition, the outcome of the case will have a direct financial impact on a party located there. The second public interest factor therefore weighs in favor of transfer. *See id.*

### 3. Familiarity with the Governing Law

The third public interest factor is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Apple argues that this factor is neutral because both districts are equally capable of applying patent law to infringement claims. (doc. 281 at 20.) Plaintiff, on the other hand, contends that this district is more capable because a journal article entitled "Where to File your Patent Case" gives this district a more favorable rating compared to other districts. Despite Plaintiff's position to the contrary, both this district and the Northern District of California are equally capable of applying federal patent law. *See In re TS Tech*, 551 F.3d at 1320-21. The third public factor is therefore neutral.

### 4. Avoidance of Conflict of Laws

Both parties agree that there is no conflict of laws issue in this case. The fourth public interest factor is therefore also neutral.

### D.  Judicial Economy

The parties additionally dispute whether transfer of the severed proceedings to the Northern District of California would be contrary to the interests of judicial economy.  (*See* doc. 290 at 15-16; doc. 304 at 7-9.)  Plaintiff's concern is that severing and transferring this action will split the action into two lawsuits with a majority of the defendants in this district and only one defendant in the transferee district; create piecemeal litigation; result in inconsistent claim construction, adjudication, and rulings; create greater uncertainty regarding the patent's scope; and subject third party witnesses to not one but two depositions in two different courts.  (*See* doc. 290 at 15-16.)  Apple responds that the two actions will involve different products and will be subject to significantly different discovery, evidence, and proceedings at trial, thus reducing the risk of duplicative judicial work and inconsistent claim construction.  (doc. 304 at 12.)  Apple argues that courts routinely allow cases involving alleged infringement of the same patents to proceed in different districts.  (*Id.* at 11.)

The goal of § 1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  In deciding whether to transfer a case, courts therefore not only consider the public and private convenience factors discussed above, but also take into account considerations of judicial economy.  *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-46 (Fed. Cir. 2010).  Generally, a court should transfer a case where, as here, most of the witnesses and evidence in the case are closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff.  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  In certain circumstances, however, judicial economy considerations can outweigh an otherwise persuasive showing of inconvenience.  *See Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC*,

2012 WL 1903875, at *2 (E.D. Tex. May 25, 2012).

For example, even when some potential witnesses and sources of proof located in the transferee venue warranted weighing convenience factors in favor of transfer, the Federal Circuit found transfer to be appropriate where the district court had become familiar with the patent in suit and related technology due to prior litigation, there was co-pending litigation before the court involving the same patent and underlying technology, no defendant party was actually located in the transferee venue, and the presence of witnesses in that location was not overwhelming. *See In re Vistaprint Ltd.*, 628 F.3d at 1346-47. The Federal Circuit pointed out, however, that each case turned on its own facts and must be decided based on an individualized, case by case consideration of the relevant factors, balancing convenience and efficiency. *Id.* at 1347 (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947); *Van Dusen*, 376 U.S. at 622).

Both this action and the severed action involve the same patent and allegedly similar underlying technology, and might involve some overlapping claim construction. This is not to say that considerations of judicial economy outweigh the convenience factors warranting transfer of the severed action, however. The risk of duplicative judicial work and inconsistent claim constructions is minimized when there is little overlap between cases. *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008). "This is particularly true when a court has had limited involvement with the case and the technology, no claim construction opinion has issued, and the cases involve different defendants with different products." *Id.*

Here, considerations of judicial economy do not outweigh the otherwise persuasive showing of inconvenience if the severed action against Apple is maintained in this district. Both this case and the severed action involve different defendants with different products and methods (even if similar

to some extent by virtue of being accused of infringing the same patent).  A claim construction opinion has not yet issued and this Court has no more familiarity with the patent in suit and the underlying technology than any other court in the United States.  The Court's substantive involvement in this case has been limited to ruling on a Rule 12(b)(6) motion to dismiss that did not require an in-depth examination or analysis of the patent in suit, the products at issue, or the underlying technology.  Given these facts, it is appropriate to transfer the severed action to the Northern District of California.[4]

## V.  CONCLUSION

Apple's motion for leave to file supplemental authority is **GRANTED**.  Its motion to dismiss should be **DENIED** and its alternative motion to sever and transfer should be **GRANTED**.  The clerk of the court should be directed to sever the complaint against Apple, assign it a new case number, and transfer it to the Northern District of California.

**SO RECOMMENDED on this 5th day of July, 2012.**



IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[4]  The Federal Circuit held in *In re EMC Corp.* that a "district court has considerable discretion to consolidate cases for discovery and for trial under Rule 42 where venue is proper and there is only 'a common question of law or fact.'" 677 F.3d at 1360.  It further held that "[c]ommon pretrial issues of claim construction and patent invalidity may also be adjudicated through the multidistrict litigation procedures of 28 U.S.C. § 1407." *Id.*  There is no showing at this time of the need to consolidate discovery or to employ the multidistrict litigation procedures outlined in § 1407.

**INSTRUCTIONS FOR SERVICE AND**
**<u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE